No. 42,442

Coronado Development Company, Inc., a Corporation, *Appellant,* v. The City of McPherson, Kansas, a Municipal Corporation, et al., *Appellees.*

(368 P. 2d 51)

Opinion filed January 20, 1962.

*Robert B. Morton,* of Wichita, argued the cause, and *Paul M. Buchanan,* of Wichita, was with him on the briefs for the appellant.

*Robert F. Stover,* of McPherson, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

Parker, C. J.: This is an action for declaratory judgment. The pleadings and the facts stipulated clearly present the legal question to be determined.

The facts, none of which are disputed, may be stated thus:

On March 12, 1960, the city planning commission of the City of McPherson, Kansas, adopted regulations governing the platting and subdivision of land within its jurisdiction (within three miles of the city limits). The regulations were approved by the board of commissioners of the city.

This controversy grows out of Section IX of the regulations which provide as follows:

"1. Where a proposed public park or playground and other public-use area, as determined by the Planning Commission and the Governing Body, is located in whole or in part within a subdivision, the subdivider shall dedicate lands for such purposes to the City of McPherson—provided, however, that such total dedication (exclusive of public streets, alleys, and pedestrian ways) shall not exceed ten percent of the total gross acreage owned or controlled by the subdivider. Where an area that is specifically designated by the Governing Body for a public park or playground and other public use, exceeds the area equivalent to ten percent of the area of the total acreage owned by the subdivider, the entire area shall be reserved for such use on all subdivision plans and plats; and the acquisition of such additional area in excess of ten percent shall then be secured by the City of McPherson, or arrangements made for its acquisition within a period not to exceed two, three or five years from the date of approval of the Preliminary Plan. The value of such land shall be established by three qualified appraisers, one of whom shall be appointed by the Planning Commission, one by the subdivider, and one of whom shall be mutually agreed upon by the other two.

"2. Where less than ten percent of the total gross area being subdivided is proposed for public parks, playgrounds, or other public-use areas except streets and alleys as designated by the Planning Commission and Governing Body, the subdivider shall dedicate such area that is less than ten percent and, in addition, pay to the City of McPherson a sum of money so that either or both the dedication and the payment equal ten percent of the appraised value of the land before it is subdivided.

"3. The entire sum of money equal to the appraised value of land, comprising an area equivalent to ten percent of the total area of the tract, shall be paid by the owner or subdivider to the City of McPherson in the event that there are not public open spaces required by the Planning Commission and the Governing Body.

"4. Sums of money so received by the City of McPherson shall be placed in a special fund to be known as the PUBLIC LAND PURCHASE AND IMPROVEMENT FUND, and allocated by the Governing Body solely for the purchase of land for public parks or playgrounds and other public areas."

The Coronado Development Company, Inc., platted a tract of land adjacent to the north boundary limits of the City of McPherson. It complied with all requirements and regulations pertaining to platting of territory except the payment of ten percent

of the appraised value of the platted area to the City of McPherson. The city planning commission has not designated any part of the platted area to be used as public parks or playgrounds.

As there are no public open spaces required by the planning commission or the governing body in the subdivision in controversy. Paragraph 3 of Section IX is the only part of the regulation before us for consideration. Paragraph 3 provides that, when no public open spaces are required by the planning commission and the governing body, ten percent of the appraised value of the entire area shall be paid to the city.

The governing body of the city refused to approve the plat unless the ten percent appraised value of the entire area, amounting to $993.75, was paid. The development company claims the regulation is invalid and filed its petition for a declaratory judgment on the issue.

The district court concluded that the regulations were a lawful exercise of the powers conferred and delegated by G. S. 1949, Chapter 12, Article 7, and that the enforcement of such regulations would not deprive plaintiff of any property without due process of law.

Thereupon plaintiff perfected the instant appeal in which it vigorously contends there is no statutory authority for the regulation under dispute; and the defendants, just as vigorously, contend to the contrary.

At the outset it should be noted, and kept in mind, that the controversy, presented by the record as stipulated, must be determined from the law of this state as it existed prior to the adoption of the so-called "Home Rule Amendment" for cities.

Under our decisions the rule of law, that cities exist only by and through statutes and have only such power as the statutes prescribe, is well-established and of long standing. See, e. g., *Stolp v. City of Arkansas City,* 180 Kan. 197, 200, 303 P. 2d 123.

In the recent case of *State, ex rel., v. City of Kansas City,* 181 Kan. 870, 317 P. 2d 806, with reference to Syl. ¶ 2 of the opinion, it is said:

"Cities are creations of the legislature and can exercise only the powers conferred by law; they take no power by implication and the only powers they acquire in addition to those expressly granted are those necessary to make effective the power expressly conferred. (*State, ex rel., v. City of Topeka,* supra; *State, ex rel., v. City of Topeka,* 176 Kan. 240, 270 P. 2d 270; *Kansas Power & Light Co. v. City of Great Bend,* 172 Kan. 126, 238 P. 2d 544.)" (p. 874.)

It is necessary that we examine the statutes to determine if authority exists for the enactment of the regulation in dispute. G. S. 1949, Chapter 12, Article 7, provides for planning and zoning by city planning commissions and governmental bodies. G. S. 1949, 12-705 provides that all plans, plats or replats of land within the city or within three miles of the city limits shall be submitted to the city planning commission and the governing body of the city for consideration. The same section provides further:

". . . And no such plat or replat or dedication or deed of street or public way shall be filed with the register of deeds as provided by law until such plat or replat or dedication or deed shall have endorsed on it the fact that it has first been submitted to the city planning commission and by the city planning commission to the governing body of such city and by such governing body duly approved. Before exercising the powers referred to above, the city planning commission shall adopt regulations governing the subdivision of land within its jurisdiction. Such regulations may provide for the proper area of streets in relation to other existing or planned streets and to the mapped plan for adequate and convenient open spaces for traffic, utilities, access of fire-fighting apparatus, recreation, light, and air, and for the avoidance of congestion of population, including minimum width and area of lots."

The foregoing statute specifically grants authority to make regulations for convenient open spaces for recreation (parks and playgrounds) in accordance with the mapped plan. It would appear to go no further. It is not authority for a regulation requiring the developer to pay ten percent of the appraised value of the platted area to the city in the event that—as is here stipulated and conceded—there are not public open spaces required by the planning commission and the governing body, within the subdivision, by any plan, mapped or otherwise. The fact that the payment is to be placed in a special fund solely for the purchase of land for public parks or playgrounds and other public areas does not add to the city's authority under the statute. Indeed, a careful analysis of the statute compels a conclusion there is nothing in any of its provisions authorizing the assessment of money as a revenue measure for *other public areas.*

Moreover, there is every reason to apply the rule that cities can exercise only the power conferred by law and take no power by implication, when considering a statute granting jurisdiction beyond the city limits.

Although this court has not had occasion to pass on this specific question the courts of other states dealing with similar regulations

have held such regulations to be beyond the scope of the statutory authority and therefore void. (See *Haugen v. Gleason*, ____ Or. ____, 359 P. 2d 108; *Rosen v. Village of Downers Grove*, 19 Ill. 2d 448, 167 N. E. 2d 230; *Kelber v. City of Upland*, 155 Cal. App. 2d 631, 318 P. 2d 561.)

The regulation, Paragraph 3 of Section IX, is beyond the scope of the enabling statutes (G. S. 1949, 12-705). The exaction of cash payments was a material departure from the statutory authorization and not reasonably related to the regulatory power delegated to the City. It necessarily follows the trial court erred in finding for the defendants and that its judgment must be reversed.

It is so ordered.