267 So.2d 860 (1972)
ADMIRAL DEVELOPMENT CORPORATION, Appellant,
v.
CITY OF MAITLAND, a Political Subdivision of the State of Florida, Appellee.
No. 71-642.
District Court of Appeal of Florida, Fourth District.
October 18, 1972.
Rehearing Denied November 14, 1972.
*861 Stephen P. Kanar, of Fishback, Davis, Dominick & Simonet, Orlando, for appellant.
James O. Driscoll, of Driscoll, Conrad & Langston, Orlando, for appellee.
MAGER, Judge.
Admiral Development Corporation, plaintiff below, has challenged the constitutionality of Section 13-8 of the Maitland Code. The lower court's ruling in favor of the City of Maitland, defendant below, upheld the constitutionality of Section 13-8 and additionally found that the actions of the plaintiff precluded raising any objection to the constitutionality of such ordinance.
Plaintiff, a firm engaged in the business of subdividing and developing land in central Florida, owned a 24.4-acre parcel of land within the City of Maitland. A proposed plat of the tract was submitted to the defendant to secure approval so as to allow plaintiff to subdivide the land. As a prerequisite to such approval plaintiff was required to comply with the provisions of Section 13-8, pertinent parts of which are hereinafter set forth:
"Sec. 13-8. Dedication of park and recreation area  When land is subdivided within the city.
"(a) When lands are subdivided within the city, at least five per cent (5%) of the gross area of such lands shall be dedicated by the owner to the city for park and recreation purposes. The location of such park and recreation area shall be recommended by the planning and zoning commission, to the city council for its approval.
"(b) If, in the judgment of the city council, the land to be subdivided is too small for a park or recreation area to be dedicated from such land, then the owner shall pay to the city a sum of money, equal to five per cent (5%) of the value of the gross area, which shall be held in escrow and used by the city for the purpose of acquiring parks and recreation areas and for no other purpose."[1]
As a result of negotiations between plaintiff and defendant with respect to the area to be dedicated an agreement was reached whereby a lot containing 8.93-acres in the proposed subdivision would be dedicated for park and recreational purposes and the *862 payment of $1,500.00 would be made by plaintiff to defendant.[2]
The plaintiff urges the unconstitutionality of Section 13-8 on basically the following grounds: (1) that the enactment of Section 13-8 is beyond the scope of the City's authority under its charter; (2) that the provisions of Section 13-8 are vague, indefinite and overbroad; (3) that in applying Section 13-8 the City exceeded the terms of its own ordinance; and (4) that to require a subdivider to subdivide land or provide money for park or recreational purposes as a condition for approval of a subdivision plat amounts to a taking of property without due process of law.
At the outset it is our view, and we so hold, that based upon the particular circumstances of this case the plaintiff is not estopped to question the validity of Section 13-8. See Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n, Fla. 1971, 245 So.2d 625.
Directing our attention to the merits of plaintiff's first ground, we have reviewed the charter provisions of the City of Maitland (particularly Sections 33, 34, 40, 83, 85, and 87 of Chapter 59-1475, Laws of Florida) and are of the opinion that the adoption of Section 13-8 was beyond the scope of these provisions. In 23 Fla.Jur. Municipal Corporations § 63, pp. 87-88, it is stated:
"... The general rule is that a municipal corporation possesses and can exercise only such powers as are granted in express words, or those necessarily or fairly implied in or incident to the powers as expressly conferred, or essential to the accomplishment of the declared objects and purposes of a corporation.
* * * * * *
"A power may not be implied as incidental to powers expressly granted merely because it is useful or convenient. It must be indispensable to the attainment of the declared objects and purposes of the corporation. The existence of power on the part of the municipality cannot be assumed; it must be made to appear, and if doubtful, the courts will not enforce it."
In City of Miami Beach v. Fleetwood Hotel, Inc., Fla. 1972, 261 So.2d 801, the Supreme Court of Florida reaffirmed the limits of the exercise of municipal powers as follows:
"That the paramount law of a municipality is its charter, (just as the State Constitution is the charter of the State of Florida,) and gives the municipality all the powers it possesses, unless other statutes are applicable thereto, has not been altered or changed. Gontz v. Cooper City (Fla.App., 1970) 228 So.2d 913; Clark v. North Bay Village et al. (Fla. 1951) 54 So.2d 240. The powers of a municipality are to be interpreted and construed in reference to the purposes of the municipality and if reasonable doubt should arise as to whether the municipality possesses a specific power, such doubt will be resolved against the City. Liberis v. Harper (1925) 89 Fla. 477, 104 So. 853. `Municipal corporations are established for purposes of local government, and, in the absence of specific delegation of power, cannot engage in any undertakings not directed immediately to the accomplishment of those purposes.'" (Emphasis ours.)
The provisions of the City charter relied on by the defendant reflect the absence of a grant of power that would serve as a source of authority to adopt Section 13-8; moreover the charter provisions do not contain sufficient language from which such authority can be reasonably inferred. Unquestionably, the City has the authority to enact ordinances to enforce the provisions of its charter; but nowhere in the cited sections of the charter do we find any provision expressly or impliedly authorizing *863 the establishment of prerequisites to or condition precedents for the subdividing of lands within the city. That is not to say that such authorization or power cannot be conferred upon the City by appropriate legislative action; but merely that the present provisions contain no such authorization. See in particular Associated Home Builders v. City of Walnut Creek, 1971, 4 Cal.3d 633, 94 Cal. Rptr. 630, 484 P.2d 606.[3]
Our conclusion that the ordinance in question is beyond the scope of the City's authority comports with several recent decisions of our sister state courts which had occasion to construe ordinances similar in purpose to Section 13-8. West Park Ave., Inc. v. Ocean Tp., 1966, 48 N.J. 122, 224 A.2d 1; Coronado Development Co. v. City of McPherson, 1962, 189 Kan. 174, 368 P.2d 51; People ex rel. Exch. Nat. Bank v. City of Lake Forest, 1968, 40 Ill.2d 281, 239 N.E.2d 819; McKain v. Toledo City Plan Commission, 1971, 26 Ohio App.2d 171, 270 N.E.2d 370; Aunt Hack Ridge Estates, Inc. v. Planning Comm., 1970, 160 Conn. 109, 273 A.2d 880.
Even if the present charter provisions were sufficiently susceptible to an interpretation authorizing the adoption of Section 13-8, it would be our view that the language of said section is so overbroad as to render the section invalid. An ordinance containing a similar requirement, i.e., that developers shall deed "at least 7%" of the platted land area for recreational purposes, was declared "arbitrary on its face", Frank Ansuini, Inc. v. City of Cranston, R.I. 1970, 264 A.2d 910. It is interesting to note in the Cranston case that although the Supreme Court of Rhode Island found that the city possessed the implied authority to adopt rules and regulations requiring voluntary donations of land by developers, the court could not justify the requirement of "at least 7%". The Rhode Island court was proceeding upon the premise that "the involuntary dedication of land is the valid exercise of police power only to the extent that the need for the land required to be donated results from the specific and unique activity attributable to the developer". The court could not reconcile the "at least 7%" requirement with the aforementioned principle and observed:
"... It seems obvious to us that a fixed percentage requirement will inevitably create inequities, which will be less likely to arise under the specifically and uniquely attributable formula." (at p. 913)
See also Carlann Shores Inc. v. City of Gulf Breeze, Santa Rosa, Cir.1966, 26 Fla. Supp. 94.
We are keenly aware of the need for planned land development with particular emphasis upon provisions for and the preservation of park and recreational areas. It is noteworthy and commendable that the City of Maitland has sought to act in furtherance of this need and concern with the enactment of Section 13-8. However, municipalities must adhere to certain basic and fundamental requirements for the adoption of such ordinances which include the need for legislative authorization as well as the avoidance of language which would permit the exercise of unbridled discretion.[4] In Smith v. Portante, Fla. 1968, 212 So.2d 298, Justice Ervin speaking for the Supreme Court of Florida stated, inter alia, at p. 299:
"... No matter how laudable a piece of legislation may be in the minds of its sponsors, objective guidelines and *864 standards should appear expressly in the act or be within the realm of reasonable inference from the language of the act where a delegation of power is involved... ."
See also Mahon v. County of Sarasota, Fla. 1965, 177 So.2d 665.
In light of the foregoing it is unnecessary to determine the efficacy of plaintiff's other contentions. In summary, we hold that Section 13-8 of the Maitland Code is beyond the scope of the City's authority under its present charter and further hold that the Section, as enacted, is invalid.
Accordingly, the final judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
REED, C.J., concurs.
WALDEN, J., dissents, without opinion.
NOTES
[1] Paragraph (c) of Section 13-8 provides:

"(c) The aforementioned value shall be the value of the land to be subdivided without improvements and shall be determined jointly by the city council and the owner. If the city council and the owner cannot agree on a land value, then the land value shall be established by arbitration. The city council shall appoint a professional land appraiser, the owner shall appoint a professional land appraiser and these two shall appoint a third. The cost of the appraisal shall be borne by the owner of the land."
[2] It appears from the record that this lot was the least desirable of all the acreage in the subdivision being basically a swampy or muck area. It appears for that reason a cash payment was also made.
[3] A review of the decision in Associated Home Builders v. City of Walnut Creek, supra, and the authorities cited therein may be useful in the consideration of any proposed charter amendment or ordinance adoption. In that case the Supreme Court of California sustained the constitutionality of a statute requiring a dedication of land or payment of fees as a condition of approval of subdivision of plats as against the contention that such statute violated equal protection and due process.
[4] See footnote 3, supra.